IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 12, 2013 Session

IN RE MYA E. ET AL.

Appeal from the Juvenile Court for Davidson County
Nos. 2009-7016, 2009-7017     Betty Adams Green, Judge

No. M2012-02323-COA-R3-PT - Filed May 13, 2013

This is a termination of parental rights case involving a set of young twins, Mya E. and Kaleah E. ("the Children"). The Children were born out of wedlock to Jasmine E. ("Mother") and Darius M. ("Father") on June 1, 2008. The Children, found to be dependent and neglected by Juvenile Court Order entered January 28, 2011, were placed in the custody of their maternal grandmother, Olivia E. Olivia E. filed a petition seeking to terminate the parental rights of Father and Mother on March 30, 2012. The petition alleged as grounds statutory abandonment and persistence of conditions. Mother later joined in the petition to terminate her parental rights. Following a bench trial, the trial court granted the petition to terminate Father's parental rights upon its finding, by clear and convincing evidence, that Father had abandoned the Children by willfully failing to visit and support them. The court also found clear and convincing evidence that the conditions leading to removal persisted and were unlikely to be remedied in the near future. The court further found, by clear and convincing evidence, that termination of parental rights was in the Children's best interest. Father has appealed. We affirm.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and JOHN W. MCCLARTY, J., joined.

James A. Rose, Nashville, Tennessee, for the appellant, Darius M.

Laura A. Stewart, Nashville, Tennessee, for the appellee, Olivia E.

## OPINION

### I. Factual and Procedural Background

At the time these Children were born, Mother was seventeen years old and residing with the maternal grandfather. Although the Children initially lived with Mother, she later relinquished residential care of them to Olivia E. in May 2009 when the maternal grandfather moved to another state. In October 2009, Olivia E. filed a petition to terminate the parental rights of both parents.[1] In response, Father filed a counter-petition for custody. In April 2010, the parties participated in mediation and reached an agreement that the Children should begin having visitation with each parent. Mother was allowed unsupervised visitation with the Children so long as she did not permit her boyfriend to be present. Mother subsequently violated the agreement, which resulted in the Children coming to live with Father. In June 2010, the court granted Father temporary legal custody of the Children and established a visitation schedule with Olivia E.

The guardian *ad litem* filed a petition seeking to have the Children adjudicated dependent and neglected on June 17, 2010. In August 2010, the paternal grandmother filed a similar intervening petition, seeking to have custody of the Children returned to her. The trial court conducted a hearing on November 29, 2010, on the pending petitions and found the Children to be dependent and neglected. By Final Order of Adjudication and Disposition entered January 26, 2011, the Court found, *inter alia*, by clear and convincing evidence as follows:

> Mya and Kaleah [E.] are dependent and neglected children pursuant to T.C.A. 37-1-102(b)(12)(B, (F), and (G). The perpetrators of the dependency and the neglect are [Mother] and [Father].

Included in the trial court's order were extensive findings as follows:

> The Court specifically *finds* that Mya and Kaleah [E.] are dependent and neglected children pursuant to T.C.A. 37-1-102(b)(12)(B), (F) and (G) because [Father] has a serious drug problem that is untreated. [Father] has been given ample opportunity (since the termination of parental rights petition was filed in October 2009) to show this Court that he could be a parent to his children. [Father] continues to fail drug screens for this Court and the General Sessions Court. [Father] has not been honest about his drug problem and has not

---

[1] This petition was voluntarily non-suited when custody of the Children was placed with Father in June 2010.

obtained drug treatment even though he had a DCS case manager who could have arranged treatment for him. The children are also dependent and neglected by [Father] because he was incarcerated for thirteen days (from September 29 to October 11, 2010) while the children were in his temporary legal custody. [Father] did not make any arrangements for the children other than expecting that his mother would care for the children in his absence. [Father] did not know how long he would be incarcerated. The Court suspects [Father] will continue to violate his probation and will be re-incarcerated since he willfully continues to use illegal substances.

The children are also dependent and neglected because [Father] has no financial ability to care for his children, no job, and no prospect of a job because of his chronic substance abuse.

The trial court also made the following significant finding:

It is alarming to the Court to discover the level of deception that has occurred in this case. If the parties had been told the truth by [Father] or his mother, Tonya [M.], about [Father's] failed drug screens in March and April 2010 the Court would never have placed the children in the temporary legal custody of [Father] in June 2010.

By its order, the court placed full and sole legal custody of the children with Olivia E. The court ordered that Father have no visitation with the Children pending further court order and that Mother be allowed supervised visitation. The court further determined that Father and Mother owed a legal duty to pay child support for the Children.

On March 30, 2012, Olivia E. filed the instant petition seeking to terminate the parental rights of both parents. By her petition, she alleged the statutory grounds of abandonment and persistent conditions. The court held a hearing on the petition on September 10, 2012. At trial, Mother announced that she was joining in Olivia E.'s petition to terminate her parental rights.

Following a bench trial, the trial court terminated Father's parental rights based on abandonment due to his willful failure to support and failure to visit, as well as persistence of conditions. The court's final order terminating parental rights included extensive, specific findings of fact. The court's findings included the following:

- [Father] attempted to alter his June 2, 2010 drug screen by diluting it, used bleach to adulterate his July 9, 2010 drug screen, failed to appear

for his October 4, 2010 and October 27, 2010 drug screens; failed his March 2, 2010, April 22, 2010, July 23, 2010, and September 27, 2010 Metro Probation drug screens; and failed his December 28, 2010 and January 4, 2011 drug screens.

- [Father] violated his probation on more than one occasion.

- [Father] was not truthful to the court during the proceedings taking place in 2010-2011, which resulted in the January 28, 2011 order.

- [Father] pled guilty to possession or casual exchange of a controlled substance on 04-20-2012, and stated during the trial on this petition that a friend had given him the drugs. He could not provide the friend's name and simply testified that he would see this friend in "traffic." This court finds [Father's] answer to not be credible.

- The findings of fact in the January 28, 2011 order also included [Father's] testimony that he was ADHD, needed to be evaluated for medication, and that he had made an appointment with Centerstone for mental health treatment.

- The order entered January 28, 2011 divests legal custody of Mya and Kaleah [E.] from [Mother] and [Father].

- [Father] has been given services by DCS including parenting classes. In addition he has been to two drug and alcohol programs. [Father] specifically admits that he hid his drug problem from DCS thereby preventing DCS from offering appropriate services to him.

- [Father] has no current employment, has applied to ten jobs in the eighteen months since Ms. Olivia [E.] received custody of the children.

- [Father] has not paid any child support since February of 2011, at which point he gave to Ms. Olivia [E.] a $100 money order.

* * *

- [Father] has no home and is living "pillar to post."

The court determined that it was in the Children's best interest to terminate Father's parental rights.[2] Father timely appealed.

## II. Issues Presented

Father presents the following issues for our review:

1.  Whether the trial court erred in terminating the parental rights of Father based on abandonment for willful failure to support and willful failure to visit.

2.  Whether the trial court erred in terminating the parental rights of Father based on persistence of conditions.

3.  Whether termination of Father's parental rights is in the Children's best interest.

## III. Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed *de novo* upon the record accompanied by a presumption of correctness unless the evidence preponderates against those findings. *Id.*; Tenn. R. App. P. 13(d). Questions of law, however, are reviewed *de novo* with no presumption of correctness. *In re Bernard T.*, 319 S.W.3d 586 (Tenn. 2010). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). As our Supreme Court has instructed:

---

[2] The trial court noted that its findings were made pursuant to Tenn. Code Ann. §36-1-113, which implies that the trial court found the requirement of clear and convincing evidence to be satisfied.

In light of the constitutional dimension of the rights at stake in a termination proceeding under Tenn. Code Ann. § 36–1–113, the persons seeking to terminate these rights must prove all the elements of their case by clear and convincing evidence. Tenn. Code Ann. § 36–1–113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 808–09; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The purpose of this heightened burden of proof is to minimize the possibility of erroneous decisions that result in an unwarranted termination of or interference with these rights. *In re Tiffany B.*, 228 S.W.3d 148, 155 (Tenn. Ct. App. 2007); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005). Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005), and eliminates any serious or substantial doubt about the correctness of these factual findings. *In re Valentine*, 79 S.W.3d at 546; *State Dep't of Children's Servs. v. Mims* (In re N.B.), 285 S.W.3d 435, 447 (Tenn. Ct. App. 2008).

*In re Bernard T.,* 319 S.W.3d at 596.

## IV. Abandonment

The trial court terminated Father's parental rights on the ground that he abandoned the Children. Tennessee Code Annotated § 36-1-113(g)(1) (Supp. 2012) provides, as relevant to this action, as follows:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred . . . .

Tennessee Code Annotated § 36-1-102(1)(A)(i) (2010) defines abandonment, in relevant part, as:

For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or

-6-

guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child . . . .

Pursuant to the statute, the court must find that a parent's failure to visit or support was willful. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007). As this Court has previously explained:

> The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36-1-102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months.

*In re Audrey S.*, 182 S.W.3d at 863.

Failure to visit or support a child is willful when a person is "aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *Id.* at 864. Further, failure to visit or to support is not excused by another person's conduct "unless the conduct actually prevents the person with the obligation from performing his or her duty, or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child." *Id.*

This Court further explained:

> The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*Id.* (citations omitted).

## A. Failure to Visit

Father argues that the trial court erred in finding that the statutory ground of abandonment for failure to visit was proven. Father initially points out that the court had restricted him from visiting the Children due to his substance abuse issues. He therefore contends that his failure to visit should not be deemed willful. We disagree.

The parties do not dispute that Father's visitation was suspended by the court due to his drug use until such time as Father could demonstrate that he was free of drugs. During his testimony, Father made several significant admissions regarding the basis for the trial court's suspension of his co-parenting time, as follows: (1) custody of the Children had been removed from him in 2010 because of his history of drug abuse, arrests, and a failed a drug test; (2) his use of illegal drugs included marijuana and lortabs, as a method of stress relief; (3) Father had failed several drug screens, either by testing positive for drugs such as cocaine and opiates or by having the samples rejected as diluted or adulterated; and (4) he also failed to appear for several drug screens.

Father further admitted that he knew he could have returned to court and sought visitation had he been clean and sober, yet he did not. Father completed two drug and alcohol rehabilitation programs but relapsed both times. By the time of trial, he claimed to be clean of drugs but stated his longest period of sobriety had been approximately one month.

Father's admissions at trial also addressed his credibility. He indicated that he was abusing drugs when he was awarded custody of the Children in 2010 and that he had lied to everyone, including the trial court, about it. At the time of trial, Father did not believe he had a drug problem or needed to attend Narcotics or Alcoholics Anonymous meetings. He could not take care of the Children at that time and stated that it might take him months or even a year to get to the point where he could do so.

This Court has consistently recognized that a parent's demeanor and credibility as a witness "play an important role in determining intent, and trial courts are accordingly in the best position to make such determinations." *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003). Further, as Tennessee Code Annotated § 36-1-102(1)(G) expressly provides: "it shall not be required that a parent be shown to have evinced a settled purpose to forego all parental rights and responsibilities in order for a determination of abandonment to be made." In this case, the proof is undisputed that Father had not visited with the Children since the trial court suspended his visitation some eighteen months before the termination of parental rights trial. Father had also not returned to court, however, to have his co-parenting time with the Children reinstated.

This Court has often held that when a parent's visitation has been suspended by the trial court due to substance abuse issues and the parent has the ability to have visitation reinstated upon a showing of sobriety but fails to do so, that parent can be found to have willfully failed to visit. *See In re Elijah B.*, E2010-00387-COA-R3-PT, 2010 WL 5549229 at *8 (Tenn. Ct. App. Dec. 29, 2010); *Tenn. Dept. of Children's Serv. v. J.A.H.*, E2005-00860-COA-R3-PT, 2005 WL 3543419 at *6 (Tenn. Ct. App. Dec. 28, 2005). As elucidated in *J.A.H.*, "Father chose not to submit to the testing that was a precondition to further

visitation . . . . Father's choice in refusing to cooperate in this regard constituted a willful decision to discontinue visiting his son." 2005 WL 3545319 at *6. Similarly, in this case, Father testified that he knew he could have asked the trial court to reinstate his visitation upon a showing of sobriety, but he failed to do so at any time during the eighteen months the Children were in the custody of Olivia E. We conclude that the trial court did not err in finding by clear and convincing evidence that Father willfully failed to visit the Children.

Father also asserts that he had attempted telephone contact with the Children but that his efforts were hampered by Olivia E. Olivia E. disputed Father's testimony, however, stating that she answered Father's calls, that she allowed him to talk to the Children, and that she returned any messages that were left. The trial court found her testimony to be credible. Father's argument in this regard is largely irrelevant, since he does not dispute that he never sought visitation with the Children.

## B. Failure to Support

Father further argues that the trial court erred in finding that his failure to support the Children was willful. His position is premised upon the assertion that he was financially unable to pay any support due to his lack of employment and income. Father entered into an agreed order setting child support on October 28, 2011. He paid only $100 total in child support, however, during the entire eighteen months the Children were in the custody of Olivia E.

Father testified that he was physically able to work but could not find employment. He had only applied for nine or ten jobs in eighteen months. Failure to support a child is deemed "willful" when a person is "aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *Audrey S.*, 182 S.W.3d at 864. Willfulness of particular conduct depends upon the parent's intent, and intent must often be inferred from the circumstantial evidence, including a parent's actions or conduct. *Id.*

The trial court found that Father's testimony demonstrated a lack of effort in trying to find employment. Our review of the record supports that determination. Father's submission of applications to ten potential employers in eighteen months translates into an application about once every six weeks. This conduct demonstrates that Father's attitude toward finding employment was, at best, indifferent. The trial court also found that Father's testimony about being "given" drugs at the time of his last arrest was not credible, noting that if Father was able-bodied enough to purchase drugs, he could have found a job. Again, trial courts are in the best position to make a determination regarding a parent's intent, based on the parent's demeanor and credibility as a witness. *D.L.B.*, 118 S.W.3d at 367.

-9-

Father failed numerous drug screens during the pendency of this case and was found to have various substances in his system, including cocaine. Father's claim that he lacked financial resources when coupled with the fact that he was able to continually acquire drugs strains credulity. As the trial court determined, if Father had the ability to procure drugs, he should have had the capacity to provide support. Father presented no justifiable reason for failing to do so. *See Audrey S.*, 182 S.W.3d at 864. The evidence does not preponderate against the trial court's determination, by clear and convincing evidence, that Father had willfully failed to support the Children.

## V. Persistence of Conditions

Tennessee Code Annotated § 36-1-113(g)(3) provides the following as an alternate ground for termination of parental rights:

> (3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>
> > (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
> >
> > (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
> >
> > (C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home . . . .

By its order terminating Father's parental rights, the trial court, *inter alia*, found that the requirements of this statutory section had been satisfied:

> Pursuant to T.C.A. § 36-1-113(g)(3), the conditions, which caused the removal of these children from [Father's] home in January 2011, have continued unabated, and there is little likelihood that his situation would be remedied in the near future. He is living "pillar to post," he is not employed, he has repeatedly been incarcerated; he failed drug tests during the pendency of the case, and he pled guilty to possession of marijuana since the filing of this

petition. Nothing has changed since this case began in 2010.

Father admits that he has been caught in a "vicious cycle of unemployment, mental health issues, and drug addiction." Despite regaining health insurance and taking his medication, however, he claims that he has not had sufficient time to turn his life around.

With reference to evidence of his criminal history, Father admitted that he had incurred charges of theft, alteration of a stolen item, and possession of controlled substances, as well as probation violations. His most recent incarceration occurred about one month before trial and was based on a controlled substance charge. He pled guilty to the charge but indicated he could not remember the circumstances of that arrest. Father was caught in possession of marijuana but could not remember the name of the friend from whom he said it had been acquired.

By trial, these Children had been removed from Father's care for eighteen months, and the conditions leading to removal, i.e., Father's drug problem and lack of financial stability, still persisted. Father's situation had not demonstrably changed since the dependency and neglect finding in January 2011. The evidence clearly supports a determination that Father never truly addressed his drug addiction, as he continued to accrue drug-related criminal charges and avoid drug tests. Simply stated, he had no job, no home, and no stability of home environment. Most significantly, Father conceded that at the time of trial, he was still unable to care for the Children, and knew not when he would be able to provide such care.

Our review of the evidence supports the determination that there was little likelihood of an early remedy to these conditions so that the Children could be safely returned to Father in the near future. Notably, Father was in denial regarding his drug problem. Despite completing two drug treatment programs, he returned to his use of drugs. Father did not believe that he needed Narcotics or Alcoholics Anonymous meetings. He agreed that his longest period of sobriety in recent history was about one month.

Father places great reliance upon this Court's opinion in *In re Joshua S.*, E2010-01331-COA-R3-PT, 2011 WL 2464720 (Tenn. Ct. App. June 16, 2011), wherein the Court refused to find persistence of conditions had been proven because the parents had successfully completed a substance abuse program and there was no proof that the parents were still abusing drugs at the time of trial. Father's reliance is misplaced. In this case, while Father had attended two drug treatment programs, it was shown that he had returned to his use of drugs thereafter. Further, there was proof that Father was still using drugs and incurring criminal charges in relation thereto as recently as one month before trial. Unlike the parents in *Joshua S.*, who had remained free of illicit drugs for a significant period of time, Father's longest period of sobriety in recent years had only been about one month.

Simply put, the evidence showed that Father had made some progress but fell far short of remedying the underlying causes for the Children's removal from his custody. Moreover, the limited proof gave no indication that the persistent conditions would be remedied at an early date. The evidence does not preponderate against the trial court's finding that the statutory ground of persistence of conditions was clearly and convincingly established.

## VI.  Best Interest of Children

Finally, Father contends that Olivia E. failed to show by clear and convincing evidence that termination of his parental rights was in the Children's best interest. When at least one ground for termination of parental rights has been established, as here, the petitioner must then prove by clear and convincing evidence that termination of the parent's rights is in the Children's best interest. *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 1994). When a parent has been found to be unfit by establishment of a ground for termination, the interests of parent and child diverge, and the focus shifts to what is in the child's best interest. *In re Audrey S.*, 182 S.W.3d at 877.

Tennessee Code Annotated § 36-1-113(i) (Supp. 2012) provides a list of factors the trial court is to consider when determining if termination is in the child's best interest. This list is not exhaustive, and the statute does not require the court to find the existence of every factor before concluding that termination is in a child's best interest. *In re Audrey S.*, 182 S.W.3d at 878. Further, the best interest of a child must be determined from the child's perspective and not the parent's. *White*, 171 S.W.3d at 194.

Tennessee Code Annotated § 36-1-113(i) lists the following factors for consideration:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
>
> (4) Whether a meaningful relationship has otherwise been

established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

In the instant action, the trial court considered the above factors and found, *inter alia,* as follows:

It is in the children's best interest for their parent[s'] rights to be terminated. These children have formed a tight knit family with Ms. Olivia [E.]. The father has no relationship with his children, has not provided for them, and has made no adjustment to his circumstances. His claim that he has now been clean for two months cannot be taken seriously by this court when he has had eighteen months to demonstrate that his children mean more to him [than] the drugs. This is especially true considering he failed to appear for two random drug screens ordered prior to trial. This shows the court he continued to use illegal drugs. He has failed to take care of his mental health, has continued to be dishonest with this court, has continued to have periods of incarceration.

-13-

Our review of the record demonstrates that these findings are supported by the evidence. By trial, Father had made no adjustment of circumstance, conduct, or conditions so as to make it safe and in the Children's best interest to be in his home. This was true despite his having gone through two drug rehabilitation programs and having received other available social services. Father has been abusing drugs for several years, and a lasting adjustment does not reasonably appear possible.

Father had not visited with the Children and had only contacted them by phone three to four times in eighteen months. The proof showed Father had no meaningful relationship with the Children at the time of trial. Olivia E. testified that the Children did not know who Father was. As grandmother, she was very bonded to the Children and they were to her as well. She enjoyed residential care of the Children from May 18, 2009, to April 28, 2010, and also from January 6, 2011, to the time of trial. Olivia E. testified that she loved the Children and planned to adopt them as she desired for them to have permanency and security. Clearly, a change of caretakers at this point would be detrimental to the Children both physically and emotionally.

The proof further showed that Father had neglected the Children while they were in his care, due to his substance abuse and criminal problems. He had no home at the time of trial and was therefore unable to care for the Children or keep them safe. Father's mental illnesses impacted his ability to care for himself and the Children. As an additional factor to be considered, Father had paid virtually no child support. From our examination of the record before us and consideration of the statutory factors, we conclude that there is clear and convincing evidence that termination of the Father's parental rights was in the Children's best interest.

VII. Conclusion

The judgment of the trial court terminating the parental rights of Father is affirmed. Costs on appeal are taxed to appellant, Darius M. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE